RAILWAY MAIL ASSOCIATION *v.* JOHNSON.

Opinion delivered October 27, 1919.

1. INSURANCE—BENEFIT AND LIFE POLICY—CLAIM OF FORFEITURE.—A fraternal benefit insurance order can not claim the forfeiture of a policy by reason of the insured's failure to pay certain monthly premiums, where, after the failure, it accepted other premiums paid by him.

2. SAME—SAME—SAME—ESTOPPEL.—Where the insured went to the order's office to inquire if his premium was paid, and was informed by the person in charge that it was, the association is estopped by the conduct of its collecting officer from claiming a forfeiture on the ground of non-payment.

3. INSURANCE—PROOF OF LOSS—DENIAL OF LIABILITY.—Denial of liability by an insurance association, waives proof of loss within the specified time.

4. INSURANCE—LIFE AND BENEFIT POLICY—DISABILITY—NOTICE OF INJURY.—The holder of a policy received injuries, and subsequently died. *Held*, where only a claim for the death was made, notice of the injury was not necessary.

5. INSURANCE—DEATH—PROOF OF HEALTH AND HABITS OF DECEASED. —Deceased held a policy in a fraternal insurance association. He sustained an injury, and later died. In an action by the beneficiary to recover on the policy, the association contended that the death was brought about by deceased having syphilis, which caused apoplexy, which brought about his death, and introduced testimony of physicians who examined deceased's body, to sustain that allegation. *Held*, the court properly permitted plaintiff to introduce witnesses, members of the family, friends and neighbors, who testified, some of them, that they prepared the body after death and that there were no scars on the body or enlargements of the glands, and that the body appeared to be in a healthy condition; that deceased had been a strong, healthy, vigorous man up to the time he was alleged to have received the injury in question.

6. INSURANCE—LIFE AND ACCIDENT POLICY—PROOF OF ACCIDENT— PRESUMPTION AS TO SELF-INFLICTION.—There is a presumption against the self-infliction of an injury, and, in the absence of proof to the contrary, the jury is warranted in finding that the insured, under a life and accident policy, sustained the injury, of which he died by accidental means.

Appeal from Bradley Circuit Court; *Turner Butler*, Judge; affirmed.

*Wilson & McGough*, for appellant.

1. A peremptory instruction should have been given for defendant because plaintiff failed to prove that appellant was a corporation and because of the failure of assured to pay assessment No. 117. 37 N. E. 353; 73 Fed. 774; 155 *Id.* 92; 102 N. W. Rep. 190.

2. The court erred in not excluding the testimony of witness Tol. Johnson, which was hearsay merely.

3. Plaintiff failed to prove that she filed proof of death and claim with the proper officer within 30 days after death. 195 Ill. App. 421; 58 Pac. 180; 128 Cal. 531; 63 N. E. Rep. 54; 28 Ind. App. 437; 58 Atl. Rep. 1057; 99 Me. 231; 71 N. W. 254; 102 Ia. 267; 181 Ill. App. 133; 58 Pac. 180, 183.

4. The court erred in its rulings as to the admission of testimony and its instructions to the jury. 37 N. E. 353; 76 S. E. Rep. 262, etc.; 73 *Id.* 99; 73 Fed. 774-6; 89 *Id.* 930; *Ib.* 932; 95 Pac. 580; 213 Fed. 599; 106 Ark. 91; 103 N. W. 735.

5. The evidence shows that deceased had diabetes, which co-operated with the injury in causing death. 155 Fed. 92. Death did not result from the injury alone. 94 U. S. 278; 73 Fed. 285.

*J. C. Clary* and *B. S. Herring,* for appellee.

1. There was no error in the admission of testimony. It showed that insured was a member of the association, had paid his assessments and died from external violent accidental injury; that he was an upright, moral man, free from all vicious, intemperate and immoral habits. The law is stated in 1 Cyc. 292 (G); 1 C. J. 498, § 294; 25 L. R. A. (N. S.) 1256; 202 S. W. 34; 1 Cyc. 289 (G); 1 C. J. 495 (K); 7 Enc. Ev., p. 549 (F).

2. Notice was given as required by law. 85 Fed. 401; 29 C. C. C. A. 223; 40 L. R. A. 653. Formal proof of death was waived. Assessment No. 117 was paid. 121 Ark. 422; 181 S. W. 279; 66 Ark. 588; 82 *Id.* 266.

McCULLOCH, C. J. The plaintiff's husband, Algie M. Johnson, was in the railway mail service for many years prior to his death, which occurred on March 28, 1918, and was a member of the Railway Mail Association, a fraternal insurance society duly incorporated and domiciled at Portsmouth, New Hampshire, with a branch office at Little Rock. The policy issued by the association to its members insured against bodily injury "through external, violent and accidental means not the result of his own vicious or intemperate conduct," and agreed to

pay to the member a certain amount per week for disability caused through the aforesaid means, and to pay to the beneficiary named in the policy the sum of $4,000 in case of the death of the member resulting within 180 days from the aforesaid means.

Plaintiff was the beneficiary under her husband's policy in said association and this is a suit instituted by her to collect the amount of the policy, and it is alleged that the death of Algie M. Johnson resulted from an accident which occurred on November 20, 1917, while on his mail route between McGehee and Warren. The association filed its answer below, defending on the ground that Johnson had forfeited his policy by nonpayment of assessments; that there was no liability on account of failure to give notice of the accident or of the death of Johnson, and that Johnson's injury and death did not result from accidental means, but resulted from a disease caused by his own vicious and immoral habits. There was a trial of the case before a jury and the verdict was in favor of the plaintiff.

(1) The assessments were levied monthly, payable on the 20th of each month, and the defendant introduced its own records from which it appeared that three assessments, payable respectively, February 20, 1917; April 20, 1917, and June 20, 1917, were not paid, and that the last assessment, which was No. 117, payable on February 20, 1918, was not paid. The proof of nonpayment of assessments came from books of defendant association, but it is undisputed that other assessments were regularly paid thereafter, and defendant was, therefore, in no position to claim a forfeiture after having regularly accepted payment of subsequent assessments. Payment of the subsequent assessments were received not merely by the local office, but by the general officers of the association, and under those circumstances the association is estopped to deny that the former assessments were paid, so as to afford grounds of forfeiture.

(2) The books also show that assessment No. 117 was not paid, and the only evidence of pay-

ment is contained in the testimony of Johnson's brother, who accompanied him to the offices of defendant association in Little Rock on a day early in the month of March, 1918, when Johnson applied for an adjustment concerning this assessment, and was informed by the person in charge of the office that the payment of the assessment had been received and a receipt forwarded. Johnson claimed that he had forwarded the money, but, according to the evidence, went to the office for the purpose of paying the assessment, if it had not been received, and he received assurances from the person in charge of the office that the payment had been received and receipt issued. This was a short time before his death and the last assessment made against him. If that testimony is true, the association is estopped by the conduct of its collecting officer from claiming a forfeiture on that ground.

We pretermit a discussion of the question whether or not the assured was required under the constitution and by-laws of the order to pay an assessment levied after the injury occurred. The argument on that point is that the rights of the parties were fixed when the injury occurred, notwithstanding that assessments were levied before death occurred as a result of the injury. We do not decide that question, however.

(3) There was a denial of liability on the part of defendant, which waived the proof of loss within the specified time. The claim of non-liability under the policy on account of failure to give notice of the injury is based on section 8, article 17 of the constitution and by-laws of the society, which reads as follows:

"In the case of death or disability, the beneficiary shall at once notify the assistant treasurer to whom the member pays his assessments or the secretary of the association, in writing. As soon as disability ceases, or in cases where disability is likely to continue for some time and partial payment is desired, the injured member shall file his application  *  *  *."

(4) No claim was made by the assured for weekly benefits on account of disability. In other words, there was no claim for the disability and we do not think that notice was required where no claim on account of disability was made, the claim being based on the death of the assured and not on the disability. If the purpose was to require notice of the injury as a prerequisite to the assertion of a death claim, more appropriate and specific language should have been used. Notice was given of the death after that event occurred, and we think that the language of the by-laws, when fairly interpreted, only require such notice, and does not require a previous notice of the injury.

(5) It is next contended that the court erred in admitting testimony concerning the habits and appearance of the deceased as indicating good health and freedom from disease. One of the defenses was that Johnson was afflicted with syphilis in the tertiary stage, and that the disease caused apoplexy, and that he received his injury, if at all, as a result of a fit of apoplexy, and that the disease was the cause of his death. The testimony of physicians was introduced showing that they examined Johnson after the alleged injury and only a short time before his death and that he had syphilis. The court permitted the plaintiff to introduce witnesses, members of the family, friends and neighbors, who testified, some of them, that they prepared the body after death and that there were no scars on the body or enlargements of the glands, and that the body appeared to be in a healthy condition, and other witnesses testified that Johnson was a strong, healthy, vigorous man up to the time he is alleged to have received the injury in question. This testimony was competent as tending to show that Johnson was not afflicted with disease, at least to the extent that it impaired his health and vigor.

Again, it is contended that there was no evidence that Johnson received an injury through accidental means. The court excluded testimony offered by the plaintiff as to Johnson's own statement concerning the

cause of his injury. Johnson was, as before stated, a railway mail clerk, and the injury which there was evidence tending to show caused his death, was received while on his run between McGehee and Warren on November 20, 1917.

On the afternoon of the previous day Johnson made the run from Warren to McGehee and spent the night at the latter place and started on the return trip early the next morning. There is proof from the testimony of one of Johnson's associates, who was with him on the trip, that he was in good health and spirits the night that he spent at McGehee as above stated, and the next morning when he started on the return trip to Warren. The witness stated that Johnson was apparently in good health, very cheerful and ate a good meal, and that he saw Johnson again on the trip at Monticello and found him apparently feeling well, but when the train reached Warren, Johnson had in the meantime occupied his car alone, he discovered that Johnson had received an injury and had a cut place above his ear from which blood was running. This witness, and another, who was also a mail clerk, and took Johnson's place on the car, testified that when Johnson walked out of the mail car he could hardly walk and was dizzy, and had a cut place above the ear and that blood was running from it. These witnesses started to carry Johnson home and procured a buggy for that purpose. He was carried home and numerous witnesses testified to his injured condition. The testimony abundantly establishes the fact that Johnson received a severe bodily injury on the trip described.

(6) There is a presumption against a self-inflicted injury and in the absence of proof, the jury was warranted in finding that Johnson was injured through accidental means. The proof being sufficient to show that Johnson was in good health at the time he received this injury, there is enough to warrant the conclusion that the injury did not result from disease caused by his own vicious habits. In fact the testimony adduced by plain-

tiff abundantly shows that Johnson was a man of exemplary habits and a man of refinement and good morals.

The court accepted the defendant's interpretation of the policy with respect to the character of accident necessary to constitute liability and gave appropriate instructions on that subject. Some of the instructions were refused, but they were repetitions of those given by the court, and we are of the opinion that there was no error committed by the court in its charge to the jury or in refusing to give instructions. It is unnecessary to discuss the court's charge in detail.

The trial abounded in issues of fact upon which there was sharply conflicting testimony, but those issues have been settled by the verdict of the jury, and we find no error in the record to justify a reversal of the judgment.

Affirmed.